**AFFIRMED as Modified; Opinion Filed July 16, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00871-CR**

**CHRISTOPHER RAY NELSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-81738-2011**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Myers

Christopher Ray Nelson appeals his convictions for sexual assault of a child and two counts of improper photography. After finding appellant guilty, the trial court sentenced appellant to five years' imprisonment for sexual assault of a child and 180 days' confinement in state jail for improper photography. Appellant brings three issues on appeal contending (1) the judgment should be modified to correct the name of the "Judge Presiding"; (2) the trial court erred by admitting appellant's oral statement; and (3) the evidence is insufficient to support the convictions for improper photography. We modify the judgment to correct the name of the "Judge Presiding," and we affirm the judgment as modified.

### BACKGROUND

Lisa Martinez, a forensic interviewer at the Collin County Children's Advocacy Center, testified she interviewed the minor complainant, D.N., about incidents with appellant, D.N.'s

stepbrother.  In one incident D.N. described to Martinez, appellant held D.N. down, put his penis on her face, and took a picture of it with a camera phone.  On two or three other occasions, appellant had D.N. pull up her shirt and bra, and he took pictures of her breasts.  Another time, appellant pulled down his pants, asked D.N. to touch his penis, and had her move her hand up and down on his penis.

Appellant was questioned by Collin County Deputy Sheriff Billy Lanier at the Children's Advocacy Center.  Before questioning appellant about the offenses, Lanier told appellant he was not under arrest and he was free to leave at any time.  Lanier did not inform appellant of his rights under article 38.22 of the Code of Criminal Procedure.  For most of the hour-long interview, appellant denied having any knowledge of why he was there or of any sexual incident with himself and D.N.  When Lanier told appellant the incident involved him holding down D.N. and taking pictures, appellant said he remembered taking pictures with his cell phone of her breasts, buttocks, and vagina.  Lanier told appellant he had information that appellant had held down D.N. and had taken out his penis, and he asked appellant where he placed his penis.  Appellant said he placed it on her face or lips.  He told Lanier he had deleted the pictures from his cell phone and that the phone had been destroyed.  Lanier asked him why he did those things, and appellant said they were pranks and he did them out of boredom and loneliness.  When asked why he had the pictures, appellant said, "just 'cause."

D.N. testified appellant put his penis on her mouth.  She also testified he took pictures of her when she did not want him to, which made her feel uncomfortable.

**MODIFICATION OF THE JUDGMENT**

In his first issue, appellant argues the judgment should be modified because it incorrectly recites the name of the "Judge Presiding."  The State agrees this issue should be sustained.  The record shows that the Honorable James Fry presided over the trial of this case, but the judgment

incorrectly states that the Honorable John Roach Jr. was the "Judge Presiding." We may modify a trial court's written judgment to correct a clerical error when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–31 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). Accordingly, we sustain appellant's first issue, and we modify the trial court's judgment to reflect that the name of the "Judge Presiding" was the Honorable James Fry, not the Honorable John Roach Jr.

## ADMISSION OF ORAL STATEMENTS

In his second issue, appellant contends the trial court erred by overruling appellant's objection to the admission of the recording of appellant's questioning by Lanier. We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Randolph v. State*, 152 S.W.3d 764, 769 (Tex. App.—Dallas 2004, no pet.). This standard gives almost total deference to a trial court's determination of historical facts and applies a de novo review of the trial court's application of the law to those facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court is the sole trier of fact, the judge of witness credibility, and the determiner of the weight given to witness testimony. *Randolph*, 152 S.W.3d at 769. We must sustain a trial court's decision to overrule a motion to suppress if the decision is supported by the record and is correct under any theory of law applicable to the case. *See Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). When, as in this case, the trial judge denies a motion to suppress and does not enter findings of fact, we view the evidence in the light most favorable to the trial court's ruling, and we assume the trial court made implicit findings of fact supporting his ruling as long as those findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Article 38.22 of the Texas Code of Criminal Procedure provides that "[n]o oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless" the accused is warned of his rights[1] during the recording but before making the statement, "and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning." TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2(a), 3(a)(2) (West 2005). Article 38.22 does not preclude the admission of statements that do not stem from custodial interrogation. CRIM. PROC. art. 38.22, § 5. Appellant was not warned of his rights during the recorded questioning by Lanier, and he asserts he was in custody at that time. The State contends appellant was not in custody during the questioning and that the trial court did not err by overruling appellant's objection to admission of the recording.

A person is in custody for purposes of article 38.22 "only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam)). The determination of custody is made on an ad hoc basis after considering all of the objective circumstances. *Id.* at 255.

---

[1] Those rights are that:

    (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

    (2) any statement he makes may be used as evidence against him in court;

    (3) he has the right to have a lawyer present to advise him prior to and during any questioning;

    (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

    (5) he has the right to terminate the interview at any time.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a).

The court of criminal appeals has outlined four general situations that may constitute custody:

(1) when the suspect is physically deprived of his freedom of action in any significant way,

(2) when a law enforcement officer tells the suspect that he cannot leave,

(3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and

(4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt*, 931 S.W.2d at 255.

In this case, the interrogation occurred at the child advocacy center, and appellant's father drove appellant to the center at Deputy Sheriff Lanier's request. Appellant knew he was a suspect in the investigation because his father talked to him about the details on the way to the center. At the beginning of the interview, Lanier told appellant he was not under arrest and that he was free to leave. The interview took place in a small room. Appellant was not handcuffed or physically restrained in any manner. Appellant never tried to leave or expressed a desire to leave the room during the interview. At the end of the interview, appellant asked Lanier what was going to happen. Lanier told appellant he would gather all the information and decide whether to send it to the district attorney, and if so, then the district attorney would "take it from there." Lanier told appellant he was not under arrest at that time and was free to leave. Appellant was not arrested that day, and he left the center.

Appellant argues the facts showed he was in custody during the interrogation because he was physically deprived of his freedom. Appellant points to the fact that Lanier asked to see appellant's driver's license, asked appellant for personal information including appellant's weight, height, eye color, and cell phone number, told appellant he must ask permission to go to the bathroom, placed himself between appellant and the door, carried his handcuffs and firearm

on his belt, and identified himself as an investigator with the Collin County Sheriff's Office. None of these facts show appellant was not free to leave. Lanier returned appellant's driver's license before asking any questions about the offenses. Lanier's asking and taking down appellant's personal information did not restrict appellant's freedom to leave. Nothing indicates Lanier would have prevented appellant from leaving if he had tried to leave or expressed a desire to leave, and Lanier told appellant he was free to leave. The fact that Lanier might have to escort appellant through the center to the bathroom or to the exit if appellant wanted to leave does not indicate appellant was not free to leave. Lanier did not display his firearm or handcuffs to appellant or refer to them, and his wearing them does not tend to show appellant's movement was restricted. Lanier's telling appellant he was an investigator with the sheriff's office did not indicate appellant was in custody.

Appellant also argues Lanier created a situation that would lead a reasonable person to believe his freedom of movement had been severely restricted. Appellant asserts his actions during the interrogation show he believed his movements were restricted. When appellant asked if he could get some water, he did not get up to get a drink of water. When he repeated his request for some water, Lanier told him he would get him some water in a minute, which appellant argues shows he could not get up to get his own water but had to wait for Lanier to get it for him. Appellant also asked for eye drops instead of getting up and leaving the room to find some on his own. None of these facts show restraint of movement to the degree associated with an arrest. Even if appellant was not allowed to leave the interview room unescorted, the fact that appellant was not permitted to walk around the child advocacy center by himself in search of water or eye drops does not show restriction of his movement to the degree of a formal arrest.

Appellant asserts that when he stated he wished he had a cigarette, Lanier told him "that he cannot." Appellant argues "this show of authority not only left Appellant with the impression

–6–

that his freedom of movement was being restricted, but also would have left any reasonable person with the same impression." Lanier did not tell him "that he cannot"; he told appellant it was a non-smoking facility. Reminding a person he is in a building where smoking is prohibited does not constitute a significant physical deprivation of a person's freedom of action. Also, appellant stated it did not matter because he did not have any cigarettes since he had been unemployed for two months. The trial court could interpret this exchange as not showing a significant restriction on appellant's movements.

Appellant also asserts Lanier created the appearance that appellant's movements were severely restricted when Lanier told appellant, "You know what I can do? I can get up and just walk out and leave you to deal with whatever. That's what I can do. That's the only thing I can offer you," and "I'm fixin' to get up and walk out and be done, and this is, and I promise you I will not come back to you when you call me tonight and say you know what I want to talk about it; I will not come back and talk to you about it because I don't trust your honesty then."[2] Appellant argues these statements left appellant with the impression that Lanier would be walking out of the interview room but that appellant would not be permitted to leave. Lanier made these statements after listening to appellant state for ten minutes (before the first statement) and thirty minutes (before the second statement) that he did not know why he was there and could not remember any sexually oriented conduct with D.N. The trial court could conclude the statements, in context, showed Lanier was telling appellant this was his only opportunity to tell him his side of the events, and that if he did not tell Lanier soon, then Lanier was going to end the interview and would proceed on the case without hearing appellant's side of the events. The

_____

[2] Appellant quotes Lanier's second statement as follows: "I'm fixin' to get up and walk out and be done and I promise I will not come back and talk to you." Appellant's quotation is inaccurate to the extent it varies from the quotation set out above.

court could conclude that the statements did not indicate appellant would not be permitted to leave the room.

Appellant also asserts that Lanier, throughout the interview, went "to great lengths" to make sure appellant knew Lanier had probable cause to arrest him but told appellant only at the beginning and end of the interview that he was free to leave. Appellant points out that Lanier told him over a dozen times that he, Lanier, knew what had happened, which appellant argues manifested to appellant that Lanier had probable cause to arrest him. We disagree. Lanier never told appellant he had sufficient grounds to arrest appellant, and he told appellant he was not under arrest. This situation is similar to that in *Oregon v. Mathiason*, 429 U.S. 492 (1977) (per curiam). In *Mathiason*, the officer told the suspect he was not under arrest before questioning him about a burglary. *Id.* The officer indicated to the suspect that the officer knew what had happened by telling the suspect his fingerprint had been found at the scene, but the Supreme Court concluded the expression of this knowledge did not convert the interrogation into a custodial interrogation. *Id.* at 795–96. Likewise, in this case, Lanier told appellant he was not under arrest and that Lanier knew what happened. Under *Mathiason*, Lanier's statement that he knew what happened could not have converted the noncustodial interrogation into custodial interrogation.

We conclude appellant has not shown the trial court erred by overruling his objection to the admission of the recording of Lanier's interrogation of appellant. We overrule appellant's second issue.

### IMPROPER PHOTOGRAPHY

In his third issue, appellant contends the evidence is insufficient to support his convictions for improper photography of D.N. In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine

whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878 894 (Tex. Crim. App. 2011). We defer to the fact finder's credibility and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

To establish the offense of improper photography as alleged in the indictment, the State had to prove beyond a reasonable doubt that appellant photographed D.N.'s breasts and photographed D.N.'s face and appellant's penis, at a location that was not a bathroom or private dressing room, without D.N.'s consent, and with intent to arouse or gratify appellant's sexual desire. *See* TEX. PENAL CODE ANN. § 21.15(b)(1) (West 2011). Appellant challenges the sufficiency of the evidence to prove the last element, that he acted with the intent to arouse or gratify his sexual desire. *See id.* § 21.15(b)(1)(B).

The intent to arouse or gratify may be inferred from the defendant's conduct, remarks, and all the surrounding circumstances. *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.). In this case, there is no evidence of whether appellant's penis was erect or flaccid when he placed it on D.N.'s face. Appellant told Lanier his conduct was pranks and the result of loneliness and boredom. Appellant denied using the pictures for masturbation. However, appellant's intent to arouse or gratify his sexual desire may be inferred from the sexual nature of the alleged improper photographs, pictures of D.N.'s breasts and of her face with appellant's penis on it, and the sexual nature of the other photographs appellant admitted taking, pictures of D.N.'s buttocks and vagina. *See McKissick v. State*, 209 S.W.3d 205, 216 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("pictures depicting the '[clothed] buttocks of several female beach goers' are probably intended to elicit some form of sexual arousal or gratification."). We conclude the evidence was sufficient for the trial court to conclude beyond a

reasonable doubt that appellant took the pictures to arouse or gratify his sexual desire. We overrule appellant's third issue.

## CONCLUSION

We modify the trial court's judgment to correct the name of the "Judge Presiding," and affirm the trial court's judgment as modified.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120871F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER RAY NELSON, Appellant

No. 05-12-00871-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas
Trial Court Cause No. 296-81738-2011.
Opinion delivered by Justice Myers, Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The portion of the judgment entitled "Judge Presiding" is modified to show the Honorable James Fry, not the Honorable John Roach Jr., presided over the trial of this case.

As modified, the judgment is **AFFIRMED**.

Judgment entered this 16th day of July, 2013.

/Lana Myers/
LANA MYERS
JUSTICE